# EXHIBIT F:

# Debtor's and Mr. White's Lease Agreement

Consult your lawyer before signing this lease

© 2004 The Judicial Title Insurance Agency LLC

# CONDOMINIUM UNIT LEASE

Landlord and Tenant agree to lease the Unit and the Stated Interest in the Common Elements at the rent and for the term stated:

**PREMISES:** 143 Admiral Lane, Bronx NY 10473 **UNIT:** #321

**CONDOMINIUM ASSOCIATION:** Harbour Pointe at Shorehaven Condominium II

**PARKING SPACE:** #321 **PARKING FEE: $** 0.00

**LANDLORD:** Jonathan C. Cornell **TENANT:** Dominick F. White
Brittney M. Watkins

Date of Lease: 6/23/2023 Annual Rent: $ 39,600.00

Lease Term: Twelve Months (12 Months) Monthly Rent: $ 3,300.00

Commencement Date: 7/01/2023 Security Deposit: $ 3,300.00

Termination Date: 6/30/2024

**1. Use and Occupancy**

The Unit may only be used strictly for residential purposes and may be occupied by no more than the following **SEVEN (7)** persons exclusively:

(a) Dominick F. White
(b) Brittney M. Watkins
(c)
(d)
(e)
(f)
(g)

No part of the Unit shall be used at any time during the term of this Agreement by Tenant(s) or any occupants for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than private dwelling. Tenant(s) shall not allow any other person, other than Tenant's immediate family or transient relatives and friends who are guests of Tenant(s), to use or occupy the Premises without first obtaining Landlord's written consent to such use.

Occupancy by any guest(s) for more than **14 (FOURTEEN)** days in any 12-month period is prohibited without Landlord's written consent and will be considered a breach of this agreement.

**2. Possession**

The failure of Landlord to give Tenant possession of the Unit on the Commencement Date shall not create liability for Landlord. In the event that possession of the Unit is not delivered on the Commencement Date, Monthly Rent hereunder shall begin on the date that possession of the Unit is delivered to Tenant and shall be prorated for that portion of the month in which possession is delivered.

If after signing this agreement, Tenant fails to take possession of the premises, Tenant will still be responsible for complying with all terms of this agreement, including paying full amount of rent due.

**3. Rent and Payment**

Tenant shall pay Monthly Rent in full on the **first (1st) day of each month** of the Lease. Monthly Rent shall be paid in advance with no notice being required from Landlord. Tenant shall not deduct any sums from the Monthly Rent unless Landlord consents thereto in writing. Rent shall not be abated or forgiven due to damage to or inability to use the common elements.

Upon signing this Lease, Tenant shall pay Landlord the first Monthly Rent due and the Security Deposit. The entire amount of rent due for the Lease Term is due upon signing this Lease; however, Landlord consents to the Tenant paying same in monthly installments provided there exists no defaults by Tenant under the terms of this Lease.

Additional Rent may include, but is not limited to:

1. any additional insurance premiums and/or expenses paid by Landlord which are chargeable to Tenant as stated hereinafter.
2. Additional Rent is due and payable with the Monthly Rent for the next month after Tenant receives notice form Landlord that Additional Rent is due and payable.

For the period from the commencement date of this agreement commencement date through the end of the month, Tenant will pay to Landlord the prorated monthly rent of **$0**. This amount will be paid on or before the effective date of this agreement.

All payments must be delivered electronically to the landlord via automatic electronic debit/ ACH transfer from a checking account held at a U.S. banking institution using an electronic processing/ payment system to be determined by Landlord. Landlord will only accept other forms of payment upon written notice to Tenant.

**4. Fees**

In the event that any rent payment required to be paid by Tenant hereunder is not paid **IN FULL** by the start of the **FIFTH (5th) DAY OF EACH MONTH**, Tenant(s) shall pay to Landlord, in addition to such payment or other charges due hereunder, an initial late fee as additional rent in the amount of **$50.00 (FIFTY DOLLARS)**.

All future payments will be allocated first to any outstanding balances other than rent. Any remaining monies will be allocated lastly to any rent balance.

If any check offered by Tenant to Landlord for any payment due under this agreement is returned for lack of sufficient funds, a stop payment or any other reason, tenant will pay landlord a returned check charge of **$20.00 (TWENTY DOLLARS)** in addition to any payment(s) due.

**5. Condition of Unit**

Tenant acknowledges that Tenant is accepting the Unit in its **"as is"** condition. Tenant further acknowledges that Tenant has thoroughly inspected the Unit and has found the Unit to be in good order and repair and that the appliances, if any, are in good operating condition. Tenant further states that Tenant knows how to operate the appliances and shall do so in accordance with the manufacturer's instructions.

**6. Security**

The Security Deposit is due upon the Tenant signing this Lease. The Security Deposit shall not be used for the payment of Monthly Rent unless agreed to, in writing, by

DW/BW

Landlord and Tenant. Landlord shall deposit the Security Deposit in a bank insured by the FDIC and same will accrue interest if mandated by law. Within fourteen (14) calendar days after Tenant surrenders possession of the Unit at the expiration of the Lease Term, Landlord shall return the Security Deposit, less any cost of repairs as authorized by this Lease, to Tenant at an address Tenant provides.

Landlord may deduct reasonable charges from the security deposit for:
(1.) Unpaid or accelerated rent;
(2.) Late charges;
(3.) Unpaid utilities;
(4.) Costs of cleaning, deodorizing, and repairing the Property and its contents for which Tenant is responsible;
(5.) Pet violation charges;
(6.) Replacing unreturned keys, garage door openers, or other security devices;
(7.) The removal of unauthorized locks or fixtures installed by Tenant;
(8.) Insufficient light bulbs;
(9.) Packing, removing, and storing abandoned property;
(10.) Removing abandoned or illegally parked vehicles;
(11.) Costs of reletting, if Tenant is in default;
(12.) Attorney fees and costs of court incurred in any proceeding against Tenant;
(13.) Any fee due for early of removal of an authorized key box;
(14.) Other items Tenant is responsible to pay under this Lease.

**7. Services and Utilities**
Landlord is responsible for paying all water supply and sewer services allocated to the Unit.

Tenant is responsible for paying all electric, natural gas, television, telephone and internet services allocated to the Unit (the "Services"). Procurement and financial responsibility for any Tenant paid utilities are the sole responsibility of the Tenant. Use of any other major appliances such as an additional freezer, air purifier, portable heater, air conditioner or similar appliances is prohibited without Landlord's written consent.

If any Services are temporarily interrupted due to an accident, emergency and/or repairs, Tenant's obligation to pay rent, in full, shall not be affected thereby.

Landlord will also supply a refrigerator, trash compactor, stove/oven, washer, dryer, and dishwasher (the "Appliances"). Any damage to the Appliances which is caused by the willful and/or negligent acts of Tenant may be repaired by Landlord, the cost of which shall be Additional Rent.

**8. Furnishings**
The Unit is being delivered unfurnished.

**9. Repairs and Alterations**
Tenant shall maintain all appliances, equipment, furniture, furnishings and other personal property included under this Lease and, upon the surrender of the Unit on the Termination Date, Tenant shall surrender same to Landlord in the same condition as received, reasonable wear and tear excepted. Tenant shall make all repairs which become necessary due to Tenant's acts and/or negligence. If Tenant does not make such repairs, Landlord may do so, the cost of which shall be Additional Rent. In the event that Tenant defaults under the terms of this Paragraph 9, Landlord may make necessary repairs or replacement, the cost of which shall be deducted from the Security Deposit.

Tenant shall not make any alterations, additions, modifications and/or changes to the Unit during the Lease Term without Landlord's written consent.

Should a mechanic's lien be filed against the Unit and/or the building in which the Unit is situated (the "Building") due to Tenant's failure to pay for alterations and/or repairs and/or work performed in the Unit, Tenant must immediately either pay or file a bond for the amount stated in the mechanic's lien. In the event Tenant fails to so pay or bond the mechanic's lien, Landlord may do so upon giving twenty (20) days prior written notice to Tenant, Landlord's cost for which shall be Additional Rent.

Provided the Condominium Association is obligated to do so, Landlord will cause the Condominium Association to repair any damage, except if such damage is the result of the act and/or negligence of Tenant.

**10. Maintenance of Unit**
Tenant shall maintain the Unit in a neat, clean and presentable condition and upon termination of tenancy, will return the premises to Landlord in a condition identical to that which existed when Tenant took occupancy except for ordinary wear and tear. **Tenant will immediately notify Landlord of any defects or dangerous conditions in and about the premises of which Tenant becomes aware.** Tenant acknowledges that they have examined the premises including all appliances, fixtures, carpets, drapes, and paint and has found them to be in good, safe, and clean condition and repair except as explicitly noted in a mutually acknowledged rider attached to this agreement.

**11. Pets**
Landlord acknowledges receipt of **$0.00** additional security deposit so as to allow the following pet within the Unit:

NONE

Tenant acknowledges that no additional pets of any kind or nature shall not be allowed in the Unit for any amount of time without the written consent of Landlord and payment of additional security deposit funds. Lawfully recognized service animals are excluded.

**12. Damage, Fire or Other Catastrophe**
In the case of fire damage or other damage to the Unit not caused by Tenant, Tenant shall give Landlord immediate notice of same. Upon receipt of such notice, Landlord may either (a) repair the Unit or (b) terminate the Lease. If Landlord makes repairs to the Unit, Landlord shall have a reasonable time in which to do so. If the damage to the Premises or the Unit renders the Unit uninhabitable, Landlord shall give notice to Tenant, after repairs are made, of the date on which the Unit may be reoccupied. Monthly Rent for the period that Tenant can not occupy the Unit because of the damage shall be forgiven.

In the event that Landlord terminates this Lease because of the damage, Landlord shall give Tenant three (3) days notice of Landlord's intent to so terminate, in which event, Monthly Rent shall be due for the period up to the date the Premises or the Unit incurred the damage.

Notwithstanding the provisions of Section 227 of the New York Real Property Law, if the Unit is substantially damaged by fire or other catastrophe (the "Occurrence"), Landlord has the absolute right to demolish, renovate or rebuild the Premises. Landlord may cancel this Lease, in such event, upon thirty (30) days written notice to Tenant of Landlord's intent, which notice shall include the date on which the Lease terminates, which shall, in no event, be less than thirty (30) days from the date of said notice. By canceling this Lease in accordance with the terms of this Paragraph, Landlord is not obligated to repair, renovate or rebuild the Premises. Monthly Rent and Additional Rent shall be paid by Tenant up to the date of the Occurrence.

**13. Liability**
Landlord shall not be liable for any loss, damage or expense to any person or property except if such loss is caused by the willful acts of Landlord.

Tenant acknowledges that Landlord will not provide insurance coverage for Tenant's property, nor shall Landlord be responsible for any loss of Tenant's property, whether by theft, fire, acts of God, or otherwise.

Tenant shall be liable for the acts of Tenant, Tenant's family, guests and/or invitees. Landlord's cost and expense in repairing any such damage or from any claim resulting from such acts shall be billed as Additional Rent and shall be paid by Tenant to Landlord.

Landlord is not liable to Tenant should anyone be refused entry into the Building or access to common elements or amenities.

Landlord is not liable for damages or otherwise if Tenant suffers them as a result of any acts of commission

or omission of the Condominium Association, its Board of Managers or any other party responsible to the Condominium Association or its Board of Managers. Landlord is not liable to Tenant with regard to any of the obligations of the Condominium Association, its Board of Managers or other party responsible to them under the Condominium Declaration. The obligation to pay Rent and Additional Rent under this Lease continues even if the Condominium Association, its Board of Managers and other parties responsible to them fails to perform such obligations. Landlord will use its best efforts to cause the Condominium Association, its Board of Managers and other parties responsible to them to fulfill their obligations.

Tenant, by executing this Lease, agrees to indemnify and hold harmless from and against any claims arising from the Condominium Declaration related to Tenant's act and/ or negligence.

Each Tenant(s) is jointly and individually liable for all Lease Agreement obligations, including but not limited to rent monies. If any Tenant(s), guests, or occupant violates the Lease Agreement, all Tenant(s) are considered to have violated the Lease Agreement. Landlord's requests and notices to any one Tenant(s) constitute notice to all Tenant(s) and occupants.

**14. Insurance**

Tenant is obligated to carry whatever property and/or liability insurance that Landlord required and shall have named on the policy of insurance Landlord, as an insured. Tenant must deliver a copy of the declaration page of the policy of insurance or the binder showing Landlord as an insured prior to taking possession of the Unit.

**15. Landlord's Entry**

Except in an emergency, for the purposes of repair, inspection, extermination, installation or repair of any system, utility or appliance or to do any work deemed necessary by Landlord, Landlord may enter the Unit on reasonable notice and at reasonable times. Upon giving such notice, Landlord may also enter the Unit to show the Unit to prospective purchasers, lenders or other persons deemed appropriate and necessary by Landlord. During the last three (3) months of the Term of this Lease, Landlord may enter the Unit to show the Unit to prospective tenants.

Landlord is not responsible for disturbance to Tenant due to work being performed on behalf of Landlord or the Condominium Association and Tenant waives any claim of eviction in such event.

Upon reasonable notice to Tenant, the representatives of the Condominium Association, Board of Managers or any other party authorized by them or by the Condominium Declaration may enter the Unit and Landlord assumes no responsibility nor shall Landlord be liable for any damages or loss caused by them.

**16. Assigning or Subletting**

This Lease may not be assigned by Tenant nor shall Tenant sublet the Unit.

**17. Subordination**

This Lease and Tenant's rights hereunder are subject and subordinate to all existing and future leases for the Building in which the Unit is located, to all mortgages on said leases and/or the Unit and/or the Building and all renewals, modifications and extensions thereof. Upon request by Landlord, Tenant shall execute any certificate to this effect.

**18. Landlord's Consent**

If, under the terms of this Lease, the consent of Landlord is required, such consent shall not be unreasonably withheld.

**19. Keys, Locks**

Tenant shall give Landlord keys to all locks for the Unit. Tenant shall not change any locks or add any locks to the Unit without obtaining Landlord's consent, and if given, Tenant shall provide keys to Landlord for these locks.

**20. Signs**

Tenant shall not place any signs on the Unit or upon the Building or in the Unit so as to be seen from outside the Unit.

**21. Compliance with Authorities**

Tenant shall, at its own cost and expense, comply promptly with all laws, rules, ordinances and directions of governmental and/or municipal authorities, insurance carriers and/or the Condominium Association and/or Board of Managers. Tenant shall give all notice Tenant receives which are for Landlord.

**22. Tenant's Defaults, Landlord's Remedies**

A. Landlord must give Tenant notice of default (except for a default in the payment of Monthly Rent and/or Additional Rent) and Tenant, upon receipt of such notice must cure the default within the time stated hereinafter:

1. a default under Paragraph 32 of this Lease, thirty (30) days.
2. a default under any other paragraph of this lease, ten (10) days;

B. In the event that Tenant fails to cure a default within the time stated therefore, Landlord may terminate this Lease. In such event, Landlord shall give Tenant notice stating the date upon which this Lease shall terminate, such date being not less than three (3) days after the date of such notice at which time this Lease shall then terminate. Tenant shall be responsible for Monthly Rent and Additional Rent as set forth in this Lease up to the date of termination.

C. If this Lease is terminated or Tenant vacates the Unit prior to the Termination Date, Landlord may enter the Unit and remove Tenant and any person or property and/or commence summary proceedings for eviction. The aforesaid actions are not the sole remedies of Landlord.

D. If this Lease is cancelled or Landlord takes back the Unit

1. Monthly Rent and Additional Rent for the unexpired portion of the Term immediately becomes due and payable. In addition, any cost or repair expended by Landlord shall be the obligation of Tenant and shall be deemed Additional Rent.
2. Landlord may re-rent the Unit and anything in it for any term and at any rental and any cost in connection therewith shall be borne by Tenant which may include, but is not limited to the cost of repairs, decorations, preparation for renting, broker's fees, advertising costs and attorney's fees. Any rent recovered by Landlord for the re-renting of the Unit shall reduce the amount of money that Tenant owes to Landlord.

**23. No Smoking Policy**

**Tenant, or Tenant's family or guests shall not smoke within premises.** This includes smoking cigarettes, cigars, hookah, pipes, or any other smoking device. This policy is in effect desire to mitigate (i) the irritation and known health effects of secondhand smoke; (ii) the increased maintenance, cleaning, and redecorating costs from smoking; and (iii) the increased risk of fire from smoking. Tenant acknowledges that Landlord's adoption of a no smoking policy does not make the Landlord the guarantor of the Tenant's health or of the smoke-free condition of the premises.

If smoking does occur on the premises:

1) Tenant is responsible for all damage caused by the smoking including, but not limited to, stains, burns, odors, and removal of debris;

2) Tenant is in breach of this agreement;

3) Tenant, guests, and all others may be required to leave the premises; and

4) Tenant acknowledges that in order to remove odor caused by smoking, the landlord may need to replace carpet and drapes and paint the entire premises regardless of when these items were last cleaned, replaced, or repainted. Such actions and other necessary steps will impact the return of any security deposit.

**24. Premises Rules**

DW | BW

Tenant shall comply with these rules (the "Rules") as well as the provided Condominium Association House Rules (the "House Rules) at all times. Tenant Acknowledges receipt and compliance to the House Rules. If there is a change in the rules, Landlord will give Tenant notice of same. Landlord shall not be liable to Tenant for another Tenant's violation of the Rules. The rights afforded under the following Rules are for the sole benefit of Landlord:

(a) the quiet enjoyment of other tenants shall not be interfered with;

(b) sounds, odors and lights which are annoying to other tenants are not allowed;

(c) floors within the Unit must be covered over 70% of the area of each room except for the bathroom and kitchen;

(d) all posted rules must be followed;

(e) smoking is not permitted in the Unit or hallways;

(f) All flammable or dangerous items may not be kept or stored in the Unit;

(g) no one is allowed access to or the enjoyment of the roof;

(h) nothing shall be placed on or attached to the fire escapes, windows, doors or in the hallways or common areas;

(i) tenant shall use its best efforts to conserve energy and water;

(k) if parking is provided, improperly parked vehicles may be immediately removed at tenant's cost;

(l) hot plates or means of cooking other than the stove are not permitted.

**25. Limitation of Recovery**

Should Tenant obtain a judgment or other remedy from a court of competent jurisdiction for the payment of money by Landlord, Tenant is limited to the Landlord's interest in the Premises for the collection of same. Landlord shall not be liable for the acts of the Condominium Association, its Board of Managers, their agents or representatives.

**26. Construction and Demolition**

Construction and/or demolition may be done in or near the Premises and if same interferes with the ventilation, view and/or enjoyment of the Unit, Tenant's obligations under this Lease shall, in no way, be affected.

**27. Terraces and Balconies**

If there is a terrace or balcony as an adjunct to the Unit, such terrace or balcony is subject to the terms of this Lease.

Tenant shall keep the terrace or balcony clean, clear of snow, ice, garbage and other debris. No alteration or additions may be made to the terrace or balcony. Tenant's property may not be stored on the terrace or balcony. Cooking on the terrace or balcony is prohibited.

Tenant shall maintain the terrace or balcony in good condition and make all repairs at Tenant's cost, except those of a structural nature which is the responsibility of Landlord.

**28. Common Areas**

If applicable, Landlord may give Tenant use of any playground, pool, parking or other areas, the use of which will be at Tenant's own risk and Tenant shall pay any additional charges beyond the standard HOA fees paid by landlord for such use. Landlord's permission to use these areas may be revoked at any time.

**29. Parking**

If this lease provides for a garage or parking space for Tenant's use, any fee that Landlord charges shall be Additional Rent and paid in accordance with Paragraph "3B" of this Lease.

During the lease term, if tenant is not in violation of any lease terms, tenant shall have the right to use, at no additional cost, **one (1)** assigned parking space labeled **#321** on the premises as part of this lease agreement. Tenant acknowledges that there are **no additional parking spaces** provided for Tenant or Tenant's guest's vehicle(s) and that any acquisition of additional parking services and any associated costs is the sole responsibility of the Tenant. Tenant further agrees to not obstruct or impede the usage of any parking facilities or vehicle storage areas that Tenant is not explicitly authorized to occupy on the premises in any form and to obey by all current and future parking regulations as established by the Shorehaven Homeowners Association. Parking rights are provided separately to any housing lease and Landlord reserves the right to revoke or restrict any parking rights upon violation of any clause of this lease.

**30. Landlord's Employees**

The employees of Landlord shall not perform any work for Tenant at Tenant's request. Such employees may not do any personal chores of Tenant.

**31. Condemnation**

If any or part of the Unit is taken or condemned by any governmental authority, Landlord may cancel this Lease on notice to Tenant and Tenant's rights hereunder shall end as of the date the authority takes title to the Premises which cancellation date can not be less than thirty (30) days from the date of Landlord's notice. Tenant shall be liable for Monthly Rent and Additional Rent to the date of cancellation and shall make no claim for the unexpired term of the Lease. Any award for the condemnation is the property of Landlord and Tenant assigns to Landlord any and all rights, interest and/or claim in and to such award.

**32. Bankruptcy**

Should Tenant file a voluntary petition in bankruptcy or an involuntary petition is filed against Tenant, or should Tenant assign any property for the benefit of creditors or should a trustee/receiver be appointed of Tenant and/or Tenant's property, Landlord can cancel this Lease upon thirty (30) days written notice to Tenant.

**33. Notices**

Any notice to be given under this Lease shall be in writing addressed to the party at the addresses set forth herein by certified mail or overnight courier service. Notice by Landlord to one named Tenant shall be deemed given to all Tenants and occupants of the Unit. Each party hereto shall accept notices sent by the other. Any change of address by one party must be given, by notice, to the other. Notice shall be deemed given when posted or delivered to the overnight courier service.

**34. Waiver of Jury Trial, Set-Off or Counterclaim**

The parties hereto waive trial by jury in all matters except for personal injury or property damage claims. In a summary proceeding for eviction, Tenant waives Tenant's right to any set-off and/or counterclaim.

**35. Premature Termination of Lease**

If the Tenant ends the lease before the one-year lease is over, the Tenant agrees to pay for the remaining months left on the lease.

**36. Holdover**

If Tenant(s) intends to vacate the Premises at the end of the lease term, Tenant(s) must give at least **30 (THIRTY) days** written notice prior to the end of this lease. If **30 (THIRTY)** days notice of non-renewal is not given prior to lease term, this lease will renew on a monthly basis at a rate equal to **150% (ONE HUNDRED FIFTY PERCENT)** of the current base rent with landlord reserving the right to terminate this agreement with 30 (THIRTY) days written notice to Tenant to vacate the premises.

**37. Inability of Landlord to Perform**

If Landlord is unable to perform any of its obligations to be performed hereunder due to governmental orders, labor strife or inability to secure goods or materials, through no fault on the part of Landlord, this Lease shall not be terminated or cancelled and such inability shall not impact upon Tenant's obligations hereunder.

**38. Severability / Illegality**

DW | BW

Should any part of this Lease be deemed illegal, the remaining portions of this Lease shall not be affected thereby and shall remain in full force and effect.

**39. Non-Disturbance**

So long as Tenant pays the Monthly Rent and Additional Rent and there exists no defaults under any of the terms of this Lease, Tenant may peacefully occupy the Unit for the Lease Term.

**40. Non-Waiver**

Any failure by Landlord to insist upon Tenant's full compliance with the terms of this Lease and/or to enforce such terms shall not be deemed to be a waiver of Landlord's rights to insist upon or so enforce the terms of this Lease at a future date.

**41. Parties Bound**

This Lease is binding upon Landlord and Tenant and their respective assignees and/or successors in interest.

**42. Paragraph Headings**

Paragraph headings are for reference only.

**43. Effectiveness**

This Lease shall become effective as of the date when Landlord delivers a fully executed copy hereof to Tenant or Tenant's attorney.

**44. Entire Agreement**

Tenant states that Tenant has read this Lease and that it fully incorporates all understandings, representations and promises made to Tenant by Landlord and/or Landlord's agent and that this Lease supercedes all prior representations, agreements and promises, whether oral or written.

**45. Amendments**

This Lease may only be changed or amended in a writing signed by the parties hereto.

**46. Riders**

Additional terms are contained in the riders annexed hereto and designated:

(a) PLUMBING CONDITION ADDENDUM
(b) MOLD AND MILDEW ADDENDUM
(c) SHOREHAVEN ADDENDUM TO LEASE AGREEMENT

**47. Definitions**

a) Condominium Association. The Unit owner's association and/or organization, the membership of which is comprised of Unit Owners (defined below).
b) Board of Managers. Persons selected, authorized and empowered to manage and operate the Building as set forth in the Condominium Declaration filed in the Office of the Clerk of the County in which the Building is situated.
c) Common Charges. The Unit's share of the Common Expenses.
d) Common Elements. As defined in the Condominium Declaration.
e) Common Expenses. The expenses of operating the Condominium as determined by the Board of Managers.
f) Common Interest. The proportionate interest a Unit Owner has in the Common Elements.
g) Unit Owner. The person or entity having title to a unit or units in the Condominium.

**48. Surrender of Premises**

On the Termination Date, Tenant shall deliver the Unit to Landlord vacant, in good condition and broom clean. Prior to such delivery, Tenant shall have vacated the Unit, removed Tenant's property, repaired all damages caused by Tenant and return the Unit in the same condition as received, reasonable wear and tear excepted.

**49. Voting Rights**

Tenant, by virtue of this Lease, does not obtain any voting rights which Landlord has to vote with respect to any matter for which a vote is called by the Condominium Association or its Board of Managers.

**50. Sale of Unit**

In the event Landlord sells the Unit, Landlord may terminate this Lease on thirty (30) days prior written notice to Tenant, in which event Tenant shall vacate the Unit on the date set forth in said notice.

This Lease has been entered into as of the Date of Lease.

LANDLORD
[signature]
Jonathan C. Cornell

TENANT
[signature]
Dominick F. White
[signature]
Brittney M. Watkins

DW | BW

**PLUMBING CONDITION ADDENDUM**

"DRAIN STOPPAGES. As of the date of this Agreement, Landlord warrants that the Unit's sewage drains are in good working order and that they will accept the normal household waste for which they were designed. They will not accept things such as paper diapers, sanitary napkins, tampons, children's toys, wads of toilet paper, balls of hair, grease, oil, table scraps, clothing, rags, sand, dirt, rocks, or newspapers. Tenant agrees to pay for clearing the drains of any and all stoppages except those, which the plumber who is called to clear the stoppage will attest to in writing, were caused by defective plumbing, tree roots, or a result of weather. Tenant agrees to keep on hand and properly use a plunger when necessary to unclog drains and prevent water overflow from toilet, sinks and bathtub."

"DRAIN CLEANING PRODUCTS. Tenant agrees not to use caustic drain cleaning chemicals in any of the drains or plumbing fixtures. Such products may cause damage to the plumbing system and may be hazardous to the environment. Tenant may be able to keep drains clean and clear with regular maintenance by pouring down the drain a quarter cup of baking soda followed by a half cup of vinegar. If there is a minor clog in the p-trap (the curved portion) of the pipe under the sink, Tenant may disconnect the pipe, clear the pipe manually, and reconnect the pipe to clear the clog or may call Landlord for assistance."

_______________ 06/23/23
Dominick F. White — Date

_______________ 6/23/23
Brittney M. Watkins — Date

_______________ 6/23/23
Jonathan Cornell — Date

DW/BW

## MOLD AND MILDEW ADDENDUM

Lessee acknowledges that it is necessary for Lessee to provide appropriate climate control in the Unit, keep the Unit clean, and take other measures to retard and prevent mold and mildew from accumulating in the Unit. Lessee agrees to clean and dust the Unit on a regular basis and to remove visible moisture accumulation on windows, walls and other surfaces as soon as reasonably possible. Lessee agrees not to block or cover any of the heating, ventilation or air-conditioning ducts in the Unit. Lessee agrees to immediately report to the Lessor: (i) any evidence of a water leak or excessive moisture in the Unit as well as in any storage room, garage or other common areas; (ii) any evidence of mold or mildew like growth that cannot be removed by simply applying a common household cleaner and wiping the area; (iii) any failure or malfunction in the heating, ventilation, air conditioning systems or laundry systems on the premises; and (iv) any inoperable doors or windows. Lessee further agrees that Lessee shall be responsible for damage to the premises and Lessee's property as well as injury to the Lessee and Occupants resulting from Lessee's failure to comply with the terms of this paragraph.

[signature] 6/23/23

Dominick F. White Date

[signature] 6/23/23

Brittney M. Watkins Date

[signature] 6/23/23

Jonathan Cornell Date

DW/BW



**ADDENDUM TO LEASE AGREEMENT**

**Tenant Bound by Declaration and By-Laws.** By becoming a tenant, each tenant agrees to be bound by the Declaration, By-Laws and other rules and regulations of both Shorehaven Condominium Association, Harbour Pointe at Shorehaven Condo I, Harbour Pointe at Shorehaven Condo II, Harbour Pointe at Shorehaven Condo III, Harbour Pointe at Shorehaven Condo IV, Harbour Pointe at Shorehaven Homeowners Association I, Inc., Harbour Pointe at Shorehaven Homeowners Association II, Inc., (whichever is applicable) and the Declarations and By-Laws of the Shorehaven Homeowners Association, Inc., and the rules and regulations of the entire community, and recognizes and accepts the right and power of the applicable Association to evict the tenant for any violation by the tenant of the above.

**Owner(s)**

Print Name: Jonathan C. Cornell

Sign Name: [signature] Date: 6/23/23

Print Name: ----------

Sign Name: ---------- Date: ——

**Notary**

Sworn to before me this

23 day of June, 2023

[signature]

Notary Public Signature and Stamp

JENNY KIM
Notary Public, State of New York
Reg. No. 01KI6403281
Qualified in New York County
Commission Expires 01/21/2024

This remote notarial act involved the use of communication technology

**Tenant(s)**

Print Name: Dominick F. White

Sign Name: [signature] Date: 6/23/23

Print Name: Brittney M. Watkins

Sign Name: [signature] Date: 6/23/23

**Notary**

Sworn to before me this

23 day of June, 2023

[signature]

Notary Public Signature and Stamp

JENNY KIM
Notary Public, State of New York
Reg. No. 01KI6403281
Qualified in New York County
Commission Expires 01/21/2024.

This remote notarial act involved the use of communication technology

DW/BW

# HARBOUR POINTE AT SHOREHAVEN CONDOMINIUMS I, II, III AND IV HOUSE RULES
## Guidelines, Procedures, Violations and Fines Schedule

**Effective September 1, 2020**

Pursuant to Article VIII. House Rules of the By-Laws of Harbour Pointe Condominium Association.

1. **BOARD OF MANAGERS:**
   **Currently, Board of Managers is comprised of three (3) elected volunteer homeowners. President, Vice-President and Treasurer/Secretary.**
2. **COMMON CHARGES: Your common charges pay for the Condominium's business operations and the maintenance of our buildings and properties.**

**3. COMPANY:**

Trion Real Estate Management is the Property Manager for the Harbour Pointe Shorehaven Condominium Association. Trion is responsible for the collection and disbursement of all funds, they negotiate all contracts, coordinates and supervise the maintenance of our buildings and properties. They handle all inquiries and implement all the condominium board's resolutions.

**4. RENOVATIONS:**
In accordance with the Harbour Pointe Shorehaven Condominiums' Offering Plan, a homeowner may not make any interior alterations or improvement to a unit nor make any structural soundness of the building. All work done pursuant to Article VIII, Section 7 must be done in accordance with all applicable rules, regulations, permits, and zoning ordinances of any governmental agencies having jurisdiction thereof. All necessary approvals must be obtained and submitted to the Board of

Managers by sending the written request for consent to do the work to the management agent.

**5. BACKYARDS:**

a) Yards are to be kept neat and well maintained by the owner. If not, this will result in a fine.

b) Permanent structures over six (6) feet from the ground are not permitted without prior written consent of the Condominium Board of Managers. Anyone that installs a permanent structure over six (6) feet high in the backyard without approval will result in a fine of **$300.00 per month after the failure to comply with the request to remove the structure**

c) Hanging clothes along the fence, rails or clothesline are not permitted.

**6. PETS:**

a) Residents who allow their pets in the backyard must clean up after them immediately once they "poop." Failure to clean up after your pet will result in a fine of $50 per incident. Dogs that frequently bark should not be left in your backyard. Please be considerate of your neighbors.

**7. DOORS:**

1. a) All **screen storm doors** must be installed on the unit's front door. The storm doors must be "consistent" with the model and color approved by the Board of Managers, which is Anderson 2000, 3000 and 4000 series, in **WHITE** with option of **Brass or Nickel hardware**. The purchase, installation, maintenance and repair of these doors are the responsibility of the unit owner. The homeowner will receive a warning letter to install or change the storm door. If this is not done, the homeowner will receive a fine of $75 per month.
2. b) **Front doors** must remain the same color and design as first purchased. If there are any alterations to the front door the homeowner will receive a warning letter to change the door back to the original design and color within 30 days. If this is not done, the homeowner will receive a fine of $750 per month.
   c) **Patio doors** can be changed to the approved model Anderson 200 series, PSGPD Double-wide Units in **WHITE** with the option of nickel hardware and design must remain the same.

**8. WINDOWS:**

The Board needs to approve the installation of all windows. Air conditioners or fans that extend beyond the outside of the windows are not permitted. Signs in the windows are also not permitted. Please do not hang

DW/BW

ornaments, rugs, string clotheslines, etc. from windows. Items that are not removed after the resident has been notified will receive a fine of $100 per month.

**9. WINDOWS AND DOOR DECORATIONS:**

The Board has approved the decorating of windows and doors during the holidays throughout the year. Decorations may not cause a disturbance to neighboring units. All decorations must be removed within ten (10) days after the holiday.

**10. SIGNS**

No residents of the condominium shall post any signs, advertisement, or posters of any kind in or on the condominium including for sale and for rent signs except as authorized and approved by the Board of Managers.

**11. VEHICLES Parking:**

a) The original sponsor assigned your designated space as stated in the Condominium Offering Plan.

b) There is no parking inside the gated community except in your designated parking space.

i. **Please park ONLY in your designated space always.**
ii. **If an unauthorized vehicle is in your designated space, please call security at (718) 824-7627.**

**Cars idling for more than three minutes are strictly prohibited.**
**Note: The New York City Administrative Code, Title 24, Section 24-163 establishes that no person should allow the engine of a motor vehicle to idle for longer than three minutes while parking, standing, or stopping.** However, there are two exceptions to this rule.

The exceptions apply to the following:

i. Legally authorized emergency motor vehicles, and
ii. Vehicles whose engine is used to operate a loading, unloading or processing device.

First Violation: $100; Second Violation: $350; Third Violation: $500.

**12. BARBEQUES IN THE BACKYARD:**

1. a) New York City Fire Department and the Board of Managers prohibit the usage of propane-fueled grills.
2. b) A barbeque grill cannot be left unattended in the backyard.

**13. NOISE:**

1. a) No resident shall make or permit any disturbing noises or activity in the home or anywhere in the Condominium, or shall not permit anything to be done therein, which will interfere with the right, comfort or convenience of other residents.
2. b) No homeowner shall play any musical instrument, practice vocal music or operate or permit to be operated audio devices or radio or television with a sound bar (a surround sound) or subwoofers or other loudspeakers in such homeowner's home between the hours of **11:00 p.m. and 7:00 a.m.**
3. c) All construction or repair work or any installation that involves noise shall be conducted between the hours of 8:00 a.m. to 5:00 p.m. No construction work or installation will be allowed after 5:00 p.m. unless it involves an emergency. No construction is allowed on **Sundays.**

Homeowners who are aggrieved by another resident' unreasonable noise should call 311 and notify security. **Please keep documentation of your complaint(s). The homeowner making the noise will receive a Warning Letter. If failure to comply: First Violation: $100; Second Violation: $350; Third Violation: $500**

**14. VANDALISM:**

Defacing the condominium's properties, including the buildings and steps with graffiti will receive a $300.00 fine per incident plus the cost of replacement and/or repair of the property.

**15. FIREWORKS:**

DW/BW

Fireworks are illegal and are not permitted in the backyards. Anyone caught with fireworks in an area owned by the condominium will receive a fine of $250 per incident.

**16. WASHING/REPAIRING VEHICLES:**

NO washing of vehicles and repairs shall be made in any of the parking spaces of the condominium. If this occurs, the homeowner will be subjected to a fine. However, homeowners may conduct emergency repairs to their vehicles.

**17. ANTENNAS:**
No radio or television aerial, satellite dish or **wires outside** the unit shall be attached to or hung from the exterior walls or roofs of the condominium unit. If it is not removed after the resident has been notified he/she will receive a fine of $50 per month.

**NO HOMEOWNER SHALL PAINT THE EXTERIOR SURFACES OF THE WINDOW, WALLS OR DOOR OPENING OUT OF THEIR HOME.**

****** Violations are issued by security.***

****** Before homeowners receive a fine, a warning letter will be sent to the home.***

# HARBOUR POINTE CONDOMINIUM ASSOCIATION

# FINES VIOLATIONS

**Effective September 1, 2020**

| | |
|---|---|
| **V ANDALISM-**<br><br>• Defacing the condominium's buildings and steps with graffiti is prohibited. | $300 per incident plus cost of replacement and/ or repair. |
| **BACKYARD:**<br><br>• Fireworks are prohibited | $250 per incident |
| **BACKYARD:**<br><br>• Installing permanent structure over 6 feet high in backyards without prior approval will be subjected to a fine and must be removed. | *** A Warning Letter to remove the structure will be sent.<br>$300 per month after failure to comply. |
| **BACKYARD:**<br><br>• Pets: Failure to clean up after your pet's "poop" will result in a fine | *** A Warning Letter to clean after your pet will be sent.<br>$50 per month after failure to comply. |
| **VEHICLES-**<br><br>• • Cars idling more than three minutes are strictly prohibited<br>• • Washing or repairing vehicles in your parking space is prohibited. | First Violation: $100 Second Violation: $350 Third Violation: $500 |
| **SCREEN STORM DOOR:**<br><br>• Must be installed on the unit's front door. | *** A Warning Letter to install or change the storm door will be sent. $75 per month after failure to comply. |
| **FRONT DOOR:**<br><br>• Must remain the same color and design as first purchased. | *** A Warning Letter to install or change the front door within 30 days. $750 per month after failure to comply. |

DW/BW

| **WINDOW:**<br>• • Signs in window, ornaments, rugs, string clotheslines and etc. from window.<br>• • Air conditioners or fans that extend beyond the outside of window are not permitted. | *** A Warning Letter to remove items will be sent. $100 per month after failure to comply. |
|---|---|
| **NOISE:**<br>• No resident shall make or permit any disturbing noises or activity in the home between the hours of 11:00 pm and 7:00 am | *** A Warning Letter will be sent. If failure to comply:<br>¬ First Violation: $100<br>¬ Second Violation: $350<br>¬ Third Violation: $500 |
| **ANTENNAS:**<br>• No Radio or television aerial, satellite dish or wires attached or hung from the exterior walls or roofs. | *** A Warning Letter to remove item will be sent. $50 per month after failure to comply. |

DW/BW