UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re:                                                   :
                                                         :    Chapter 7
BRITTNEY MICHELLE WATKINS,                               :    Case No. 25-10264-lgb
                                                         :
                Debtor.                                 :
---------------------------------------------------------x
                                                         :
JONATHAN CORNELL,                                        :
                                                         :
                Plaintiff,                              :    Adv. Pro. No. ___-___-lgb
                                                         :    (Judge Lisa G. Beckerman)
   -against-                                           :
                                                         :
BRITTNEY MICHELLE WATKINS,                               :
                                                         :
                Defendant.                              :
---------------------------------------------------------x

**COMPLAINT TO: (I) DENY DISCHARGE; AND (II) IN THE ALTERNATIVE,
DETERMINE DISCHARGEABILITY OF DEBT**

Plaintiff Jonathan Cornell ("Plaintiff"), pro se, brings this Complaint against Brittney Michelle Watkins ("Defendant" or "Debtor") pursuant to 11 U.S.C. § 727 and 523.

### JURISDICTION, VENUE, AND CONSENT

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

3. Venue is proper under 28 U.S.C. § 1409(a).

4. Plaintiff consents to entry of final orders and judgment by this Court.

### PARTIES

5. Plaintiff is an individual residing at 120 Bourndale Road North, Manhasset, New York 11030, and is owner and landlord of 143 Admiral Lane, Unit 321, Bronx, New York 10473 (the "Premises").

6. Defendant is the debtor in Chapter 7 bankruptcy Case No. 25-10264-lgb, having filed her petition on February 11, 2025 (the "Petition Date").

## FACTUAL ALLEGATIONS

### I. THE FRAUDULENT LEASE APPLICATION (JUNE 2023)

7. On June 17, 2023, Defendant and co-applicant Dominick Franklin White ("White") submitted a joint rental application for the Premises using Defendant's email address (Brittneymwatkins004@gmail.com), submitting identification, and financial records for both individuals on one application.

8. The application included fabricated employment documents:

   a. pay stubs purportedly from Robert Half International dated June 8, 2023 and June 22, 2023, showing Defendant's year-to-date earnings of $28,400, containing ADP payroll formatting, detailed tax calculations, and direct deposit information;

   b. a W-2 form from Robert Half International fraudulently displaying EIN 13-1740122, the actual Employer Identification Number of St. Barnabas Hospital; and

   c. fabricated pay stubs purportedly from Saint Barnabas Hospital dated May 25, 2023 and June 8, 2023, showing White's net pay of $4,357.34 on both forms;

9. The application included a fabricated landlord reference from 'Amanda Moss,' purportedly representing 1719 Gates LLC, who falsely stated Defendant was a tenant in good standing.

10. Investigation confirmed:

    a. Robert Half International's July 22, 2025 certification found no employment records for Defendant for the period January 2023 to Present, establishing that the June 2023 pay stubs purporting to show current employment and year-to-date earnings of $28,400 as of June 2023 were fabricated;

    b. Amanda Moss was never affiliated with 1719 Gates LLC or CW Realty Group; and

    c. Defendant was subject to eviction proceedings by 1719 Gates LLC (Queens County Housing Court LT-320223-22/QU) during her application.

11. Relying on these fraudulent documents, Plaintiff entered into a lease with Defendant and White on June 23, 2023, for monthly rent of $3,300. Plaintiff would not have executed the lease had he known Defendant's representations regarding employment, income, and rental history were false.

## II.  RENTAL PERFORMANCE AND EVICTION (JUNE 2023 - MARCH 2025)

12. All rental payments between June 2023 and January 2024 originated from White's accounts via CashApp and ACH transfer, not from Defendant.

13. Defendant and White ceased all rental payments in January 2024 with the last payment received from White's bank account on January 25, 2024.

14. Plaintiff obtained judgments of possession in Bronx County Civil Court on January 23-24, 2025 (LT-324389-24/BX, LT-308077-24/BX). A warrant of eviction issued January 27, 2025. Defendant filed bankruptcy February 11, 2025, before the NYC Marshal served eviction notice (February 24, 2025) but after losing both proceedings. This Court granted relief from automatic stay February 20, 2025 [ECF No. 9]. Marshal executed eviction on March 27, 2025.

15. Upon regaining possession, Plaintiff discovered intentional property damage requiring professional remediation: damaged walls and doors, and broken appliances. Combined damages from unpaid rent, holdover rent, and property restoration exceed $70,000.

### III.   DEFENDANT'S BANKRUPTCY FILINGS AND FALSE OATHS

16. In her Statement of Financial Affairs, Defendant declared under penalty of perjury that her 2023 gross income was $7,500, contradicting the $28,400 shown on pay stubs she submitted to Plaintiff over a year earlier.

17. Defendant submitted a sworn Affidavit of Non-Filing to the Trustee stating she lacked sufficient income in 2023 to require filing tax returns, contradicting the income represented to Plaintiff.

18. Defendant's schedules omitted financial accounts she later admitted possessing at the 341 meeting: CashApp (username '$QueenBCashy'), PayPal, and Zelle (tied to Brittneymwatkins004@gmail.com). Schedule A/B (Official Form 106A/B) Question 17 specifically requires disclosure of 'Cash' including 'money in checking, savings, or other financial accounts. Defendant checked 'No' for this question despite possessing active

accounts. These omissions violated her certification under penalty of perjury that schedules were complete and accurate.

19. Defendant's schedules failed to disclose her economic household arrangement with White or the extensive financial support she receives from him.

## IV. 341 MEETING TESTIMONY (MARCH 13, 2025)

20. At the Meeting of Creditors, Defendant testified under oath that:
    a. She no longer lives at 143 Admiral Lane but now resides at 2930 Wilson Avenue;
    b. She has no unlisted financial accounts;
    c. She is aware of her CashApp, PayPal, and Zelle accounts (contradicting her schedules);
    d. She was aware of both court judgments before filing bankruptcy; and
    e. Her $3,300 monthly rental expense applies to "143 Admiral Lane" (contradicting her earlier testimony).

21. When questioned about the $20,900 discrepancy between her sworn bankruptcy income ($7,500) and pay stubs submitted to Plaintiff ($28,400), Defendant provided only evasive responses: 'I don't work there anymore' and 'I don't get paid that much no more'— answering present-tense questions about current employment status rather than addressing the historical income contradiction between documents submitted in June 2023 and bankruptcy schedules filed February 2025.

## V. RULE 2004 EXAMINATION AND CONSCIOUSNESS OF GUILT

22. This Court ordered Rule 2004 examinations of Defendant and White on April 14, 2025 [ECF No. 23], with subsequent orders extending deadlines and compelling compliance [ECF Nos. 29, 30, 42]. After extensive delays and service complications, examination was scheduled for September 25, 2025, at 1:30 p.m. via Zoom with court reporter Joshua Edwards.

23. During the September 25, 2025 examination, Defendant testified under oath that she knew about eviction cases before filing bankruptcy but admitted marking 'No' on Question 11 of her petition regarding eviction judgments despite actual knowledge of two judgments entered January 23-24, 2025, less than three weeks before filing.

24. When questioned about Robert Half employment, Defendant provided contradictory testimony, first stating she lost her job 'around 2021' during COVID, then moments later claiming 'around 2020.' This testimony, if truthful, directly contradicts the June 2023 pay stubs she submitted to Plaintiff.

25. Defendant thus admitted under oath that she was not employed by Robert Half in June 2023, the precise period for which she submitted fabricated pay stubs showing active employment.

26. At 2:03 p.m., precisely 29 minutes into examination and immediately when questioned about her employment at Robert Half, Defendant abruptly disconnected without explanation. Despite Plaintiff's attempts to contact her counsel and waiting with the court reporter, Defendant never returned. As of this filing, 95 days have passed without any explanation for her departure or attempt to complete examination.

27. White completely failed to appear for examination despite proper service of multiple court orders and has provided no documents or communications. As co-applicant on the

lease, cohabitant with Defendant, and source of all rental payments, White possesses material knowledge regarding Defendant's actual financial condition and the circumstances surrounding the fraudulent lease application. Under Fed. R. Civ. P. 37(b)(2), a court may draw adverse inferences from a party's failure to comply with discovery orders. Additionally, in civil proceedings such as bankruptcy adversary proceedings, adverse inferences may be drawn from silence or non-cooperation when probative evidence has been offered. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). His complete refusal to comply with court orders supports the adverse inference that his testimony would establish facts unfavorable to Defendant, specifically that Defendant knowingly made false oaths regarding her income and financial accounts.

## VI.  POST-PETITION DISCOVERY

28. Subpoena responses established:

   a. Robert Half International certified on July 22, 2025: 'We have made a thorough search of our files and found no physical records dated between January 2023 to Present' for Defendant', definitively establishing that pay stubs dated June 8, 2023 and June 22, 2023 purporting to show current Robert Half employment and $28,400 year-to-date earnings were fabricated, along with the W-2 form fraudulently displaying St. Barnabas Hospital's EIN 13-1740122;

   b. financial institutions documented 416 bidirectional transactions totaling $27,663.19 between Defendant and White from January 2023 through mid-2025 specifically,

      i. Apple Cash records showing 132 transactions ($7,113.64) from White to Defendant and 50 transactions ($4,448.95) from Defendant to White;

      ii. Zelle records showing 70 transactions ($2,846.00) from White to Defendant and 88 transactions ($10,705.82) from Defendant to White;

      iii. and CashApp records showing 54 transactions ($1,845.00) from White to Defendant and 22 transactions ($703.78) from Defendant to White;

    c. Saint Barnabas Hospital payroll records confirmed that the amounts on White's paystubs submitted for the dates of May 25, 2023 and June 8, 2023 as part of Defendant's rental application do not match the true and correct paystubs issued by his employer.

    d. Municipal Credit Union (MCU) statements confirmed the Saint Barnabas Hospital payroll direct deposit for June 8, 2023 shown on the fabricated pay stub submitted by Defendant did not match the actual deposit;

    e. CashApp and MCU records confirmed White paid all rent to Plaintiff from June 2023 through January 2024; and

    f. personal service at 2930 Wilson Avenue confirmed Defendant and White cohabit.

29. Defendant's own Rule 2004 testimony corroborates Robert Half's certification. When questioned about her Robert Half employment, Defendant testified under oath that she left that position 'around 2020' or 'around 2021' during COVID. This sworn testimony—combined with Robert Half's certification of no employment records for January 2023 to Present conclusively establishes that the pay stubs dated June 8, 2023 and June 22, 2023, were fabricated. Defendant created fraudulent documents representing she was currently

employed at a company where, by her own sworn admission, she had not worked for approximately two to three years.

30. Defendant and White function as a single economic household for bankruptcy means test purposes under the economic unit theory. The financial interdependence between Defendant and White is demonstrated by:

   a. 416 financial transactions totaling $27,663.19 over approximately 24 months;

   b. substantial bidirectional flows with White transferring $11,804.64 to Defendant (256 transactions) while Defendant transferred $15,858.55 to White (160 transactions), evidencing commingled household finances rather than independent financial lives;

   c. White making all rental payments to Plaintiff via his CashApp and bank accounts from June 2023 through January 2024;

   d. joint lease application as co-applicants;

   e. cohabitation at 2930 Wilson Avenue; and

   f. mathematical impossibility of Defendant's claimed $7,500 annual income supporting $3,300 monthly rent ($39,600 annually) without White's integrated financial participation.

31. Under the economic unit approach, courts examine financial interdependence between individuals, including pooling of income and expenses. *In re Fraleigh*, 474 B.R. 96 (Bankr. S.D.N.Y. 2012). The extensive, reciprocal nature of these transfers, totaling more than triple Defendant's declared annual income establishes they pool resources and function economically as one household. Properly calculated with White's income

included, Defendant's household income likely exceeds median income thresholds, establishing presumption of abuse under § 707(b).

32. While *Fraleigh* addresses § 707(b), its definition of 'economic unit' is also instructive in determining the mandatory scope of disclosure for Schedule I in this Chapter 7 case.

## VII. PATTERN OF FRAUDULENT CONDUCT

33. Defendant engaged in similar conduct of defaulting on rental agreements with two prior landlords:

    a. 1719 Gates LLC evicted Defendant (Queens County Housing Court, LT-320223-22/QU) and is listed in her schedules as owed $39,350;

    b. Michael K. Reid filed a non-payment case against Defendant in Binghamton City Court in 2020 (LT-126012-20/BI), ultimately regaining possession of his property that was rented by Defendant after negotiating a settlement.

34. New York Real Property Law § 227-f prohibits using eviction history in rental decisions, a protection Defendant exploited by concealing ongoing evictions when applying to Plaintiff.

35. This pattern demonstrates Defendant is a "professional tenant" who strategically signs leases she cannot afford and has no intention of honoring, not a debtor deserving of a fresh start.

## VIII. Claims for Relief

### COUNT I

### OBJECTION TO DISCHARGE - FALSE OATH OR ACCOUNT

## 11 U.S.C. § 727(a)(4)(A)

36. Plaintiff incorporates by reference paragraphs 1 through 35 as if fully set forth herein.

37. Section 727(a)(4)(A) requires denial of discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

38. To prevail on a § 727(a)(4)(A) claim, a creditor must prove by preponderance of evidence: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Levine*, Adv. Pro. No. 07-90212 (Bankr. N.D.N.Y. 2009).

39. Fraudulent intent may be established by showing "reckless disregard for the truth," which courts treat as the functional equivalent of actual fraud *In re Mattei*, Adv. Pro. No. 21-07029 (Bankr. S.D.N.Y. 2023) (Beckerman, J.). Fraudulent intent may be inferred from the totality of circumstances, including the systematic nature of omissions and the debtor's conduct when confronted with discrepancies.

40. Defendant made multiple materially false oaths under penalty of perjury:

   a. falsely answering 'No' to Official Form 101, Part 2, Question 11 regarding eviction judgments despite knowledge of two judgments entered three weeks before filing;

   b. falsely answering 'No' to Schedule A/B Question 17 regarding financial accounts, omitting CashApp, PayPal, Zelle, Apple Cash, and bank accounts despite thousands of dollars in transactions;

   c. failing to disclose extensive financial enmeshment with White and failing to include White's income in means test calculation despite functioning as single economic household;

   d. declaring $7,500 annual income in Statement of Financial Affairs while having submitted pay stubs to Plaintiff over a year earlier documenting $28,400 year-to-date income; and

   e. testifying at 341 meeting that $3,300 monthly rent applies to Admiral Lane while simultaneously testifying she no longer lives there.

41. "Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes." *In re Mattei,* Adv. Pro. No. 21-07029 (Bankr. S.D.N.Y. 2023) (Beckerman, J.)

42. Each statement was materially false and known by Defendant to be false, as evidenced by: (a) contradictory documents Defendant herself created and submitted; (b) her actual knowledge of financial accounts, court judgments, and economic arrangements with White; (c) her abrupt departure from examination when questioned with evidence of falsity; and (d) the systematic and pervasive nature of the omissions across multiple schedules and statements.

43. Defendant's abrupt departure from court-ordered examination precisely when questioned about her employment at Robert Half constitutes powerful consciousness of guilt:

   a. She appeared voluntarily, testified 29 minutes, then disconnected only when questioning turned to her dates of employment at Robert Half.

   b. She provided no explanation, invoked no privilege, and never returned despite 95 days elapsing.

    c. Courts recognize that evasive conduct and failure to provide credible explanations when confronted with evidence of false statements permit an inference of fraudulent intent. *In re Adler*, 395 B.R. 827, 841 (E.D.N.Y. 2008);

44. These false oaths were material to estate administration, means test calculation, asset identification, and Defendant's entitlement to discharge.

45. White's complete failure to appear for court-ordered examination regarding the financial arrangements between himself and Defendant supports the inference that his testimony would corroborate that Defendant knowingly made false oaths regarding her income and financial condition. *In re WorldCom, Inc.*, 377 B.R. 77, 108-09 (Bankr. S.D.N.Y. 2007)

46. Defendant's conduct represents deliberate dishonesty designed to conceal assets, understate income, and fraudulently obtain bankruptcy relief, not inadvertent error.

## COUNT II
## OBJECTION TO DISCHARGE - CONCEALMENT OF PROPERTY
## 11 U.S.C. § 727(a)(2)(A)

47. Plaintiff incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48. Section 727(a)(2)(A) requires denial of discharge if a debtor, with intent to hinder, delay, or defraud, concealed property within one year before filing. 11 U.S.C. § 727(a)(2)(A). Intent to defraud may be inferred from conduct and circumstances. *In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983).

49. Defendant concealed:

    a. CashApp, PayPal, Zelle, and Apple Cash accounts;

    b. A bank account ending in 4976;

    c. 416 financial transactions with White totaling $27,663.19 across all platforms;

    d. her economic household arrangement with White involving bidirectional transfers;

    e. and the nature of their financial interdependence.

50. The sophisticated, multi-platform nature of concealment, spanning three separate digital payment systems with hundreds of transactions, demonstrates deliberate intent to hinder and defraud creditors by preventing discovery of her actual financial condition and household resources. Intent to defraud is further demonstrated by systematic omissions, admission under oath of account possession, substantial concealed transaction value, examination walkout when questioned about evidence, and stark inconsistency between claimed poverty and actual financial activity.

## COUNT III
## OBJECTION TO DISCHARGE - FAILURE TO EXPLAIN LOSS OF ASSETS
## 11 U.S.C. § 727(a)(5)

51. Plaintiff incorporates by reference paragraphs 1 through 50 as if fully set forth herein.

52. Section 727(a)(5) requires denial of discharge if a debtor fails to satisfactorily explain loss of assets or deficiency of assets. Once a creditor establishes that a debtor at an earlier time had assets, and that those assets are no longer available to creditors, the burden shifts to the debtor to satisfactorily explain what happened to those assets. *In re Cacioli*, 463 F.3d 229 (2d Cir. 2006)

53. Defendant represented $28,400 year-to-date income in June 2023 pay stubs submitted to Plaintiff and received $11,804.64 from White during January 2023 through mid-2025

while simultaneously transferring $15,858.55 back to White, assets and financial flows that should have been available to creditors or explained.

54. Defendant has never satisfactorily explained: disposition of claimed income represented on fabricated pay stubs, what happened to funds received from White, how she pays $39,600 annual rent on $7,500 declared income, the source and disposition of $15,858.55 she transferred to White, or actual income sources.

55. When questioned at 341 meeting and Rule 2004 examination, Defendant provided only evasive answers before fleeing examination. This failure to explain constitutes grounds for denial of discharge under § 727(a)(5).

## COUNT IV

## NON-DISCHARGEABILITY - FRAUD IN OBTAINING LEASE

## 11 U.S.C. § 523(a)(2)(A)

56. Plaintiff incorporates by reference paragraphs 1 through 55 as if fully set forth herein.

57. This count is pleaded alternatively to Counts I through III

58. Section 523(a)(2)(A) excepts from discharge debts obtained by 'false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

59. Defendant made knowingly false representations by fabricating a landlord reference from non-existent Amanda Moss that represented Defendant as a tenant in good standing while facing active eviction proceedings.

60. Defendant intended to deceive Plaintiff into believing she had positive rental history, as demonstrated by the inclusion of the fake landlord reference on her application.

61. Plaintiff's reliance was justifiable under *Field v. Mans*, 516 U.S. 59, 74-75 (1995), which established that justifiable reliance under § 523(a)(2)(A) does not require investigation unless "the facts should be apparent to one of [the plaintiff's] knowledge and intelligence from a cursory glance" or the plaintiff discovered something warning of deception. Defendant's fraudulent reference facially appeared genuine, and Plaintiff had no reason to suspect falsity, especially after Plaintiff conducted standard landlord due diligence by verifying the landlord reference by, (a) calling 'Amanda Moss' through provided contact information, and (b) speaking with 'Amanda Moss' who answered affirmatively to the Defendant being a tenant in good standing current with all her rent obligations to 1719 Gates LLC.

62. Defendant's fraud proximately caused Plaintiff's losses exceeding $70,000 in unpaid rent, holdover rent, intentional property damage requiring professional remediation, and related costs.

## COUNT V

## NON-DISCHARGEABILITY - FRAUD RE: FINANCIAL CONDITION

## 11 U.S.C. § 523(a)(2)(B)

63. Plaintiff incorporates by reference paragraphs 1 through 62 as if fully set forth herein.

64. This count is pleaded alternatively to Counts I through III.

65. Section 523(a)(2)(B) excepts from discharge debts obtained by materially false written statements respecting financial condition, reasonably relied upon, made with intent to deceive. To the extent fabricated pay stubs dated June 8, 2023 and June 22, 2023, and the

fabricated W-2 form constitute statements respecting financial condition, the debt incurred that relied on these statements is non-dischargeable under § 523(a)(2)(B).

66. The fabricated documents were: written statements; materially false (Robert Half certified no employment records for January 2023 to Present); respecting financial condition (income and employment status); reasonably relied upon by Plaintiff in standard landlord due diligence; and created with intent to deceive as demonstrated by their sophistication, coordination, and Defendant's subsequent evasive conduct when confronted.

WHEREFORE, Plaintiff respectfully requests:

1. Denial of Defendant's discharge in its entirety pursuant to 11 U.S.C. § 727(a)(4)(A), (a)(2)(A), and/or (a)(5);

2. In the alternative, if this Court grants Defendant a discharge, determination that Plaintiff's debt exceeding $70,000 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), and/or (a)(2)(B);

3. An award of costs and expenses of this adversary proceeding pursuant to 11 U.S.C. § 523(d) and Bankruptcy Rule 7054;

4. Findings that Dominick Franklin White's complete failure to appear for court-ordered examination, despite his material knowledge as co-applicant and cohabitant regarding Defendant's actual financial condition, supports adverse inferences that his testimony would establish Defendant's knowing and fraudulent false oaths, concealment of property, and fraud in obtaining the lease;

5. Pre-judgment and post-judgment interest; and

6. Such other relief as the Court deems just and proper.

Dated: December 29, 2025
Manhasset, New York

_____
Jonathan Cornell, Pro Se
120 Bourndale Road North
Manhasset, New York 11030
Tel: (646) 374-8267
Email: cornell.jonathan@gmail.com